[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR MODIFICATION OF ALIMONY AND PLAINTIFF'S MOTION FOR CONTEMPT
The defendant moved for a modification of alimony December 16, 1992. The matter was heard by the court on diverse days between November 22, 1993 and January 20, 1994.
The marriage of the parties was dissolved on May 29, 1980. The court's decree incorporated by reference the parties' separation agreement dated May 20, 1980. By the terms of the agreement, the defendant was required to pay the plaintiff until her death or remarriage, unallocated alimony in the amount of $3,166.60 per month together with a cost of living adjustment. At the time of the decree the defendant's salary was shown to be $80,000. The agreement provided that he could not request a modification unless his income fell below $70,000 per year.
The post-judgment history of the parties' dissolution action CT Page 4899 has generated voluminous pleadings wherein it is evident that the defendant felt unduly burdened by the obligations he undertook for his children's educations and his former wife's support.
On February 8, 1990, the defendant moved to allocate the unallocated alimony and support order as his children had reached their majority. The court reduced the monthly payment by $1500 per month as adjusted by the cost-of-living formula provided in the decree and further stated that the balance remaining would continue as alimony under the terms and conditions as set forth in the agreement. (Order, Coppeto, J., July 16, 1990.)
Defendant asserts that this court cannot look to the financial circumstances of the parties in 1990 but must consider the circumstances at the time of the dissolution. He claims that in 1990 the court interpreted the contract, the separation agreement and did not enter an order of modification.
Although this court determined after the first day of hearings in November that it would treat the motion to allocate as a motion to modify, it has had occasion to review the file and case law further. Accordingly, it now finds that the court in 1990 engaged in interpreting the separation agreement, rather than modifying the alimony order pursuant to section 46b-86 of the General Statutes.
In 1990, the court found that the parties' agreement provided that, in the event of the plaintiff's remarriage, that portion of the unallocated award attributable to child support was $500 per month per child, during the child's minority. The court continually looked to the agreement, pointing out that the defendant was still required to contribute to the support of emancipated children with regard to their college education expenses. The court concluded that the agreement "clearly indicates that the parties were concerned with the well-being and best interests of their children. . . ." while there was "nothing in the agreement to indicate that the support obligation was to continue beyond the age of majority."
Therefore, this court looks to the circumstances of the parties at the time of the dissolution as reflected in their financial affidavits to determine whether there is any change in circumstances to consider if the threshold retirement for modification as specified in the separation agreement is met.
That threshold is found in section 2.1 of the agreement, which provides that the defendant cannot request a modification unless his CT Page 4900 income were less than $70,000 per year.
In his motion to modify the defendant claims he is "presently earning less than at the rate of $70,000 per annum and has suffered substantial changes in circumstances. . . ." However, by the time the defendant had filed his motion in 1992 he was well on his way to earning in excess of $139,000. His motion, therefore, is based on a false premise and he is entitled to no modification at that time.
In 1991 the evidence shows he earned nearly $280,000 from Ferman Selz, and then earned approximately $47,000 from Baron Capital which he joined in the fall of 1991. He earned $139,000 from Baron Capital in 1992 and left it voluntary in September to work for the Stamford Company, joining some friends trying to develop a business within the Stamford Company. It was at this time that he filed the instant motion for modification, claiming that he was below the threshold of $70,000. One month later, on January 18, 1993, he signed a Memorandum of Understanding with Stamford Company calling for a monthly salary of $5000 for the first three months, after which he was to receive a payout of 50% of his production.
On January, 22, 1994 the defendant testified that he had been "let go" and changed his employment to work at D. Blech, a brokerage firm. He receives one-third of commissions he earns and has no contract or a guaranteed draw.
In 1993 the defendant received $15,000 for the first three months and earned commissions of $48,163 through December 15, 1993. He also received $1500 from a real estate investment and perhaps $300-$400 in oil tax shelters which he did not list on his financial affidavit. At the time of the hearing, he anticipated the receipt of $6000 as income earned in 1993 and deferred to 1994.
The fact that $6000 was earned but not paid him in 1993 and the filing of the December 1992 motion anticipating a decrease his income to below $70,000, makes his claim for modification very suspect. He deliberately placed himself in a position, when he left Baron Capital, where he could not comply with the court's order. The court finds that he has an earning capacity well in excess of $70,000. The court cannot ignore the evidence given at the beginning of this hearing as to his earnings over the years, nor the pleadings, stipulations or decisions of the trial and appellate courts since judgment of dissolution entered in this case. It is not convinced that he cannot find more lucrative employment in his field. The CT Page 4901 court can find no basis for a modification based on the $70,000 threshold for 1993.
The defendant claims that his circumstances have changed because of the decrease in income and because he has remarried and has two minor children. While that is the case, the change in income was caused by him.
The plaintiff's financial situation is dire. She has encountered difficulties when the defendant failed to meet his obligations. She lost a condominium unit to foreclosure in 1990, and she was discharged in bankruptcy in 1992. At 56, she is a per diem flight attendant with a charter airline but is presently on furlough. Her former employers, Pan Am and Braniff, ceased to exist. She has had some computer training but is unable to find another job. She obtained a broker's license in Connecticut in the 1970's but never utilized it to sell houses. She has made no attempt to seek such a license in Florida. She did not convince the court that she has shown great initiative in seeking employment. Nevertheless, her economic future is precarious.
Therefore, even were the court to look at a change of circumstance instead of a threshold income level, the court would arrive at the same conclusion, which is that the motion to modify is denied.
Further, the court is guided by the language of section 2.1 of the separation agreement which states that the plaintiff is to receive a "cost-of-living adjustment limited pro rata to the husband's increase vis a vis his cost of living increase." This provision states that the agreement is based on the defendant's then current income of $80,000 annually. The defendant has not received an increase of earnings during 1993. This court, therefore, does not impose the cost of living increment on the payments to be made to the plaintiff.
The defendant shall pay to the plaintiff the sum of $2817.82 per month from January 1, 1994. In April 1995 he is to send the plaintiff copies of his W-2 forms and all similar documents which show the amounts received by him as income for 1993. In the event said income exceeds $80,000, the cost of living adjustment is to be determined at that time in accordance with section 2.1 of the agreement, and the defendant is to pay the plaintiff the increment owed for 1993 by June 1, 1995. CT Page 4902
The parties agreed that if the court did not modify the alimony retroactively, the arrearage owed by the defendant is $38,657.48. That sum includes $2500 in legal fees which the defendant failed to pay the plaintiff as directed by the Appellate Court. [Gallagher v.Gallagher], 29 Conn. App. 482, 484. On January 20, 1994 the defendant agreed to pay $10,000 on January 28, 1994 and $10,000 on February 28, 1994. The court orders the defendant to pay the balance of the arrearage, in monthly installments of $1000 until the arrearage if paid in full. In addition, the defendant' is to pay any arrearage resulting from the entry of this order, which affirms the monthly amount the defendant should have been paying, to the extent that it may exceed any monthly amount the defendant has paid as current alimony since January 1, 1994. This second arrearage, if any, is to be paid in monthly installments of $1000 commencing one month after the first-arrearage is fully paid and continuing until the second arrearage is paid in full.
The plaintiff's motion for contempt is denied. While the defendant's failure to pay more than $3300 as alimony in 1993 is contemptible, the court gives the defendant the benefit of the doubt, since there were negotiations between counsel and since he agreed to pay the plaintiff $20,000 toward the arrearage by the end of February 1994. Accordingly the plaintiff's motion for attorney's fees is denied.
An immediate wage withholding order shall enter.
Leheny, J.